**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANCISCO MENDOZA CEDILLO<br>a/k/a PACO CEDILLO RAMOS<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>DINORA RAMOS<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>       Plaintiffs,<br><br>v.<br><br>AL'S MARKET, LLC<br>d/b/a COMPASS ROSE<br>1346 T Street NW<br>Washington, DC 20009<br><br>MAYDAN, LLC<br>d/b/a MAYDAN<br>1346-B Florida Avenue NW<br>Washington, DC 20009<br><br>ROSE MICHELE PREVITE<br>1421 T Street NW, Apt. 9<br>Washington, DC 20009<br><br>MICHAEL BRIAN SCHUSTER<br>539 Kentucky Avenue SE<br>Washington, DC 20003<br><br>MARCELLE G. AFRAM<br>2617 Parker Avenue<br>Silver Spring, MD 20902<br><br>       Defendants. | Civil Action No. _____ |

# COMPLAINT

1. While Plaintiffs worked at Defendants' two restaurants, Defendants did not use the aggregate hours that Plaintiffs worked at both restaurant locations to calculate Plaintiff's overtime pay. Accordingly, Defendants failed to pay Plaintiffs a substantial amount of overtime wages.

2. Plaintiffs brings this action against Al's Market, LLC; Maydan, LLC; Rose Michele Previte; Michael Brian Schuster; and Marcelle G. Afram ("Defendants") to recover damages for Defendants' willful failure to pay overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code, § 32-1001 *et seq.*; and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*

## Jurisdiction and Venue

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b), because all Defendants reside in this district, or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## Parties

5. Plaintiff Francisco Mendoza Cedillo is an adult resident of the District of Columbia. He is also known as Paco Cedillo Ramos.

6. Plaintiff Dinora Ramos is an adult resident of the District of Columbia.

7. Defendant Al's Market, LLC is a District of Columbia corporate entity. It does business as Compass Rose. Its principal place of business is located at 1346 T Street NW, Washington, DC 20009. Its registered agent for service of process is Michael Schuster, 539 Kentucky Avenue SE, Washington, DC 20003.

8. Defendant Maydan, LLC is a District of Columbia corporate entity. It does business as Maydan. Its principal place of business is located at 1346 Florida Avenue NW, Washington, DC 20009. Its registered agent for service of process is Rose Previte, 1346 T Street NW, Washington, DC 20009.

9. Defendant Rose Michele Previte is an adult resident of the District of Columbia. She resides at 1421 T Street NW, Apt. 9, Washington, DC 20009. She is an owner and member of Defendant Al's Market, LLC and Maydan, LLC. She exercises control over the operations of Al's Market, LLC and Maydan, LLC — including their pay practices.

10. Defendant Michael Brian Schuster is an adult resident of the District of Columbia. He resides at 539 Kentucky Avenue SE, Washington, DC 20003. He is an owner and member of Defendant Al's Market, LLC and Maydan, LLC. He exercises control over the operations of Al's Market, LLC and Maydan, LLC — including their pay practices.

11. Defendant Marcelle G. Afram is an adult resident of Maryland. She resides at 2617 Parker Avenue, Silver Spring, MD 20902. She is a member of Defendant Al's Market, LLC and Maydan, LLC. She exercises control over the operations of Al's Market, LLC and Maydan, LLC — including their pay practices.

12. Under the direction of Defendants, Al's Market, LLC and Maydan, LLC operated as though it were one business.

13.     At all relevant times, Defendants had multiple employees, including Plaintiffs, working concurrently at both locations.

14.     At all relevant times, Defendants coordinated the schedules of Plaintiffs and their coworkers so as not to cause a conflict with the staffing needs of either location.

15.     Defendants own and operate both the restaurant known as Compass Rose, located at 1346 T Street NW, Washington, DC 20009, and the restaurant known as Maydan, located at 1346 Florida Avenue NW, Washington, DC 20009.

### Factual Allegations Specific to Plaintiff Mendoza Cedillo

16.     Plaintiff Mendoza Cedillo worked at Compass Rose from approximately March 2014 through May 1, 2020.

17.     Plaintiff Mendoza Cedillo worked at Maydan from approximately November 1, 2017 through approximately April 29, 2020.

18.     Plaintiff Mendoza Cedillo worked simultaneously at both Compass Rose and Maydan from approximately November 1, 2017 through approximately April 29, 2020.

19.     Plaintiff Mendoza Cedillo worked at Compass Rose and Maydan as a kitchen laborer.

20.     Plaintiff Mendoza Cedillo's job duties at Compass Rose primarily consisted of: opening the restaurant; receiving, unpacking and putting away daily deliveries; cutting vegetables and meat; and preparing dressings and food toppings.

21.     Plaintiff Mendoza Cedillo's job duties at Maydan primarily consisted of baking bread.

22.     From approximately July 1, 2017 through approximately October 31, 2017, Plaintiff Mendoza Cedillo typically and customarily worked approximately thirty-two and a half hours per week at Compass Rose.

23. From approximately November 1, 2017 through approximately February 29, 2020, Plaintiff Mendoza Cedillo typically and customarily worked an aggregate of approximately eighty-six and a half hours per week at Compass Rose and Maydan.

24. Starting on approximately March 1, 2020, Plaintiff Mendoza Cedillo typically and customarily worked an aggregate of approximately sixty-eight hours per week at Compass Rose and Maydan.

25. From approximately July 1, 2017 through approximately February 29, 2020 Defendants paid Plaintiff Mendoza Cedillo a biweekly salary for his work performed at Compass Rose.

26. Defendants paid Plaintiff Mendoza Cedillo approximately the following biweekly salaries:

| Approximate Dates | Biweekly Salary |
|---|---|
| Jul. 01, 2017—Dec. 31, 2019 | $1,400.00 |
| Jan. 01, 2020—Feb.29, 2020 | $2,000.00 |

27. Starting on approximately March 1, 2020, Defendants paid Plaintiff Mendoza Cedillo a weekly salary of approximately $720.00 for his work performed at Compass Rose.

28. From approximately November 1, 2017 through approximately February 29, 2020 Defendants paid Plaintiff Mendoza Cedillo an hourly rate for his work performed at Maydan.

29. Defendants paid Plaintiff Mendoza Cedillo approximately the following hourly rates:

| Approximate Dates | Hourly Rate |
|---|---|
| Nov. 01, 2017—Jan. 31, 2018 | $17.00 |
| Feb. 01, 2018—Dec. 31, 2019 | $18.00 |
| Jan. 01, 2020—Feb. 29, 2020 | $19.00 |

30. Starting on approximately March 1, 2020, Defendants paid Plaintiff Mendoza Cedillo a weekly salary of approximately $240.00 for his work performed at Maydan.

31. From approximately July 1, 2017 through approximately October 31, 2017 Defendants paid Plaintiff Mendoza Cedillo an effective weekly total of approximately $700.00.

32. From approximately November 1, 2017 through approximately January 31, 2018, Defendants paid Plaintiff Mendoza Cedillo an effective weekly total of approximately $1,618.00.

33. From approximately February 1, 2018 through approximately December 31, 2019, Defendants paid Plaintiff Mendoza Cedillo an effective weekly total of approximately $1,672.00.

34. From approximately January 1, 2020 through approximately February 29, 2020, Defendants paid Plaintiff Mendoza Cedillo an effective weekly total of approximately $2,026.00.

35. Staring on approximately March 1, 2020, Defendants paid Plaintiff Mendoza Cedillo an effective weekly total of approximately $960.00.

36. At all relevant times, Defendants paid Plaintiff Mendoza Cedillo by check.

37. While Plaintiff Mendoza Cedillo worked concurrently at both Compass Rose and Maydan, he typically and customarily worked more than forty hours per workweek for Defendants.

38. Defendants did not pay Plaintiff Mendoza Cedillo overtime wages — or one and one-half times his regular hourly rate for hours worked in excess of forty in a workweek.

39. For Plaintiff Mendoza Cedillo's work in the three years preceding the filing of this Complaint, Defendants owe him approximately $57,275.00 in overtime wages (excluding liquidated damages).

**Factual Allegations Specific to Plaintiff Ramos**

40. Plaintiff Ramos worked at Compass Rose from approximately December 8, 2018 through approximately May 1, 2020.

41. Plaintiff Ramos worked at Maydan from approximately April 2, 2018 through approximately April 29, 2020.

42. Plaintiff Ramos worked simultaneously at both Compass Rose and Maydan from approximately December 8, 2018 through approximately April 29, 2020.

43. Plaintiff Ramos worked at Compass Rose and Maydan as a kitchen laborer.

44. Plaintiff Ramos' job duties at Compass Rose primarily consisted of cleaning the restaurant, preparing food, and washing dishes.

45. Plaintiff Ramos' job duties at Maydan primarily consisted of cleaning the restaurant.

46. From approximately April 2, 2018 through approximately December 9, 2018, Plaintiff Ramos typically and customarily worked approximately twenty-eight hours per week.

47. From approximately December 10, 2018 through approximately February 29, 2020, Plaintiff Ramos typically and customarily worked approximately fifty-nine and a half hours per week.

48. Starting on approximately March 1, 2020, Plaintiff Ramos typically and customarily worked approximately fifteen hours per week.

49. From approximately December 10, 2018 through approximately February 29, 2020, Defendants paid Plaintiff Ramos $14.50 per hour for her work performed at Compass Rose.

50. Starting on approximately March 1, 2020, Defendants paid Plaintiff Ramos a weekly salary of approximately $180.00 for her work performed at Compass Rose.

51. Defendants paid Plaintiff Ramos a biweekly salary for her work performed at Maydan.

52. Defendants paid Plaintiff Ramos approximately the following biweekly salaries:

| Approximate Dates | Biweekly Salary |
| --- | --- |
| Apr. 02, 2018—Jun. 30, 2018 | $700.00 |
| Jul. 01, 2018—Feb.29, 2020 | $800.00 |

53. Starting on approximately March 1, 2020, Defendants paid Plaintiff Ramos a weekly salary of approximately $180.00 for her work performed at Maydan.

54. From approximately April 2, 2018 through approximately June 30, 2018, Defendants paid Plaintiff Ramos an effective weekly total of approximately $350.00.

55. From approximately July 1, 2018 through approximately December 9, 2018, Defendants paid Plaintiff Ramos an effective weekly total of approximately $400.00.

56. From approximately December 10, 2018 through approximately February 29, 2020, Defendants paid Plaintiff Ramos an effective weekly total of approximately $1,023.50.

57. Starting on approximately March 1, 2020, Defendants paid Plaintiff Ramos an effective weekly total of approximately $360.00 per week.

58. At all relevant times, Defendants paid Plaintiff Ramos by check.

59. While Plaintiff Ramos worked concurrently at both Compass Rose and Maydan, she typically and customarily worked more than forty hours per workweek for Defendants.

60. While Plaintiff Ramos worked concurrently at both Compass Rose and Maydan, he typically and customarily worked more than forty hours per workweek for Defendants.

61. Defendants did not pay Plaintiff Ramos overtime wages — or one and one-half times his regular hourly rate for hours worked in excess of forty in a workweek.

62. Defendants owe Plaintiff Ramos approximately $10,750.00 in overtime wages (excluding liquidated damages).

## Factual Allegations Common to All Plaintiffs

63. Defendant Marcelle G. Afram fired Plaintiffs.

64. Defendant Marcelle G. Afram supervised Plaintiffs' work.

65. Defendant Marcelle G. Afram set Plaintiffs' work schedule.

66. Defendant Marcelle G. Afram set Plaintiffs' pay rate.

67. Upon information and belief, Defendant Rose Previte signed Plaintiffs' checks.

68. Defendant Rose Previte occasionally handed Plaintiffs their paychecks.

69. Defendants Rose Michele Previte and Michael Brian Schuster have participated in decision(s) to hire management at Compass Rose and Maydan.

70. Defendants Rose Michele Previte and Michael Brian Schuster have participated in decision(s) to fire management at Compass Rose and Maydan.

71. Defendants Rose Michele Previte and Michael Brian Schuster have participated in decision(s) to set wage rates at Compass Rose and Maydan.

72. Defendants Rose Michele Previte and Michael Brian Schuster have participated in decision(s) to set hours of operations at Compass Rose and Maydan.

73. Defendants Rose Michele Previte and Michael Brian Schuster participated in the decision(s) to allow Plaintiffs to work concurrently at Compass Rose and Maydan.

74. At all relevant times, Defendants had the power to hire and fire Plaintiffs.

75. At all relevant times, Defendants had the power to control Plaintiffs' work schedule.

76. At all relevant times, Defendants had the power to supervise and control Plaintiffs' work.

77. At all relevant times, Defendants had the power to set Plaintiffs' rate and manner of pay.

78. At all relevant times, Defendants were aware that they were legally required to pay Plaintiffs one and one-half times their regular hourly rate for all hours worked in excess of forty hours in any one workweek.

79. At all relevant times, Defendants were aware that they were legally required to timely pay Plaintiffs all wages legally due to them.

80. At all relevant times, the annual gross volume of Defendants' business exceeded $500,000.00.

81. At all relevant times, Defendants had two or more employees who handled goods and/or materials that had traveled in or been produced in interstate commerce.

82. At all relevant times, Defendants had employees who handled food products, such as fish, beef, or vegetables, that had been raised or grown outside of the District of Columbia.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

83. Plaintiffs incorporates the foregoing paragraphs as if fully restated herein.

84. Each defendant was an "employer" of Plaintiffs within the meaning of the FLSA. 29 U.S.C. § 203(d).

85. The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. 29 U.S.C. § 207(a)(1). This regular hourly rate cannot be lower than the applicable state or local minimum wage. 29 C.F.R. § 778.5.

86. Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek.

87. Defendants' violations of the FLSA were willful.

88. For Defendants' violations of the FLSA, Defendants are liable to Plaintiffs for unpaid overtime wages, an equal amount as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE DCMWA

89. Plaintiffs incorporates the foregoing paragraphs as if fully restated herein.

90. Each defendant was an "employer" of Plaintiffs within the meaning of the DCMWA. D.C. Code § 32-1002(3).

91. The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. D.C. Code § 32-1003(c).

92. Defendants violated the DCMWA by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek.

93. Defendants' violations of the DCMWA were willful.

94. For Defendants' violations of the DCMWA, Defendants are liable to Plaintiffs for unpaid overtime wages, an amount equal to three times the unpaid overtime wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## FAILURE TO PAY WAGES UNDER THE DCWPCL

95. Plaintiffs incorporates the foregoing paragraphs as if fully restated herein.

96. Each defendant was an "employer" of Plaintiffs within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

97. The DCWPCL requires employers to pay an employee who is discharged no later than the working day following the discharge. D.C. Code § 32-1303(1).

98. The DCWPCL requires employers to pay an employee who quits or resigns all wages due upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever is earlier. D.C. Code § 32-1303(2).

99. For purposes of the DCWPCL, "wages" include, among other things, regular, minimum, and overtime wages. D.C Code § 32-1301(3).

100. Defendants violated the DCWPCL by knowingly failing to timely pay Plaintiffs all wages due, including overtime wages.

101. Defendants' violations of the DCWPCL were willful.

102. For Defendants' violations of the DCWPCL, Defendants are liable to Plaintiffs for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court. *See Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016) ("[T]he liquidated-damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants, jointly and severally, on all counts, in the current total amount of **$282,065.00**, and grant the following relief:

a. Award Plaintiffs $272,100.00, consisting of the following overlapping elements:

  i. unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

  ii. unpaid overtime wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

  iii. unpaid wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

b. Award Plaintiffs pre-judgment and post-judgment interest as permitted by law;

c. Award Plaintiffs attorney's fees and expenses computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services, pursuant to the DCWPCL, D.C. Code § 32-1308(b)(1) (as of this date, approximately $9,565.00);

    d.      Award Plaintiffs court costs (currently, $400.00); and

    e.      Award any additional relief the Court deems just.

Date: August 3, 2020                             Respectfully submitted,

                                                              <u>/s/ Justin Zelikovitz</u>  
                                                              JUSTIN ZELIKOVITZ, #986001  
                                                              DCWAGELAW  
                                                              519 H Street NW  
                                                              Washington, DC 20001  
                                                              Phone: (202) 803-6083  
                                                              Fax: (202) 683-6102  
                                                              justin@dcwagelaw.com

                                                             *Counsel for Plaintiffs*